UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN GEORGE HUNT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:20-cv-01521-TWP-MG |
| KELLY SERVICES INC, | ) ) ) |
| Defendant. | ) ) |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Kelly Services, Inc. ("Kelly") (Filing No. 41). *Pro se* Plaintiff John George Hunt ("Hunt") initiated this litigation pursuant to Title VII of the Civil Rights Act ("Title VII") and the Age Discrimination in Employment Act ("ADEA") after Kelly precluded him from accepting substitute teaching assignments in a particular school district. For the following reasons, the Court **grants** Kelly's Motion.

### I.   LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). Moreover, "employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* at *8–9 (citation and quotation marks omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However,

> [I]t is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citations omitted).

## II.     BACKGROUND

A.     **Procedural Background**

As an initial matter, the Court must address deficiencies in Hunt's summary judgment response (Filing No. 50; Filing No. 50-1).  Federal Rule of Civil Procedure 56 governs summary judgment procedure in federal court, and Local Rule 56–1 governs summary judgment procedure in this District.  Under Local Rule 56–1, a movant is obligated to include in its brief a "Statement of Material Facts Not in Dispute" containing the facts "that are potentially determinative of the motion" and "as to which the movant contends there is no genuine issue." S.D. Ind. L.R. 56–1(a).  Within twenty-eight days after the motion is filed, the non-movant must file and serve a response brief that includes a section entitled "Statement of Material Facts in Dispute" that identifies determinative facts and controverts those facts.  L.R. 56–1(b).  The Court will deem facts admitted without controversy to the extent they are supported by admissible evidence and not specifically controverted.  L.R. 56–1(f).

The Seventh Circuit has "repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions." *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009); *see also Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).  *Pro se* litigants are not exempt from compliance with these procedural rules.  *Pearle Vision, Inc.*, 541 F.3d at 758; *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced").  Courts liberally construe the pleadings of individuals that proceed *pro se,* but the Court is not required to search the record to support a *pro se* litigant's position.  *Greer,* 267 F.3d at 727; *see* L.R. 56-1(h).

Hunt's response brief (Filing No. 50) does not contain the required "Statement of Material Facts in Dispute," and instead contains a "Statement of Material Facts **Not** in Dispute".  *Id.* at 3

3

(emphasis added).  Hunt attached to his response brief a copy of Kelly's brief, throughout which Hunt inserted "objections" and "disputes" as to Kelly's statement of facts and arguments ([Filing No. 50-1](#)).  Throughout his "objections," Hunt asks the Court to strike portions of Kelly's brief, but the only supporting authority Hunt cites is a California Court of Appeals decision discussing a California court's authority under the California Code of Civil Procedure ([Filing No. 50-1 at 3](#), 5, 8, 12, 15, 18, 22, 26, 28–30, 33, 38, 44, 54, 68, 72, 75, 81 (quoting *Reeves v. Safeway Stores, Inc.*, 16 Cal. Rptr. 3d 717, 725 (Cal. Ct. App. 2004) (citing Cal. Civ. Proc. Code § 437c, subd. (b)(1))).  Importantly, Hunt does not offer any Seventh Circuit authority or any federal authority, for striking portions of Kelly's brief.  Hunt's requests to strike are **denied**.

Hunt's "disputes" largely consist of unsupported argument and do not offer any admissible evidence disputing any of the material facts identified by Kelly.  Much of the limited evidence that Hunt submitted with his brief, ([Filing No. 51](#)), is unauthenticated, and therefore constitutes inadmissible hearsay on which the Court may not rely in deciding summary judgment.  Fed. R. Civ. P. 56(e); Fed. R. Evid. 901; *Martz v. Union Lab. Life Ins. Co.*, 757 F.2d 135 (7th Cir. 1985).

Neither Hunt's response brief nor his annotated version of Kelly's brief satisfies the requirements of Local Rule 56-1 or offers evidence disputing Kelly's statement of material facts.  Therefore, finding Kelly's statement of material facts not in dispute to be supported by Kelly's admissible evidence, the Court accepts Kelly's statement of material facts not in dispute for purposes of its Motion.  However, the Court's standard for considering those facts remains in the light most favorable to Hunt.

**B.      Factual Background**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Hunt as the non-moving

party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Kelly is a staffing agency that contracts with school districts nationwide to temporarily fill positions, including substitute teaching positions ([Filing No. 42 at 3](#)). Kelly hired Hunt, a Black man, in 2014 to provide substitute teaching services in the Indianapolis, Indiana, area. *Id*. Hunt was sixty years old at the time of the events at issue. *Id.* To accept substitute teaching assignments in Indiana, Kelly employees must pass a background check and hold a substitute teaching permit, which must be renewed every three years. *Id.* Kelly does not assign its employees specific substitute teaching assignments. Instead, its employees use a system called Frontline, which allows the employees to review and accept assignments. *Id.*

Between August 2014 and December 2019, Hunt completed approximately three hundred seventy-six substitute teaching assignments across nine school districts and charter schools in the Indianapolis area. *Id.* Three hundred forty-seven of those assignments were at schools in the Metropolitan School District of Lawrence Township ("Lawrence Township"). *Id.* Hunt lived within Lawrence Township's boundaries, and he preferred assignments in Lawrence Township's school district because they were the closest to where he lived. *Id.* at 10.

On December 6, 2019, Hunt accepted a substitute teaching assignment at Harrison Hill Elementary School ("Harrison Hill"), a school in Lawrence Township at which Hunt had substitute taught several times without incident. *Id.* at 4. At 3:40 p.m. that day, Kelly's Client Lead, Angie Miller ("Miller"), received an email from Harrison Hill's Assistant Principal, Ti'Asha Oglesby ("Oglesby"), about an incident involving Hunt. *Id.* at 5; [Filing No. 43-4 at 5](#). The email stated that at around 1:50 p.m., a female student who Hunt had been supervising went to the school nurse's office. The student was so upset that she was having trouble breathing ([Filing No. 43-4 at](#)

5). The student told the nurse she felt uncomfortable about the way Hunt had looked at female students and about images she saw on Hunt's computer. *Id.* The nurse reported the incident to Oglesby, who then began an investigation. *Id.* at 5. Oglesby took statements from five other female students. *Id.* Each of the students "expressed concern" about how Hunt had been looking at them and said Hunt had been "looking at them up and down" and looking at female students' butts. *Id.* One of the student's parents also called the school and stated her child thought she saw Hunt touching himself inappropriately through his coat pocket. *Id.* And more than one student stated Hunt had been looking at pictures of teenage cheerleaders and children on his computer. *Id.* All of the students' parents were informed of the incident, and Oglesby told the parents that Hunt would no longer be permitted in the building. *Id.*; Filing No. 43-4 at 5.

At 3:46 p.m., Miller responded to Oglesby's email, stating Kelly would investigate and asking whether the incident had been reported to the police or the Indiana Department of Child Protective Services ("DCS")[1] (Filing No. 42 at 5–6; Filing No. 43-4 at ¶ 4). At 4:05 p.m., Lawrence Township's Director of Human Resources, Emily Haas Brown, emailed Miller asking Kelly to "block" Hunt from future assignments in Lawrence Township (Filing No. 42 at 6; Filing No. 43-4 at ¶ 5).

Kelly complied with Lawrence Township's request (Filing No. 42 at 10). School districts with whom Kelly contracts may request that employees be excluded from their district or specific schools, and Kelly's contract obligates Kelly to comply. *Id.* at 6. Kelly is not aware of any circumstance in which it has questioned a district's request to exclude an employee. *Id.* Since

---

[1] The District did not respond to Miller's question about police or DCS involvement, but it is undisputed that Kelly did not contact the police or DCS about the incident (Filing No. 42 at 6).

2015, Lawrence Township has requested the exclusion of sixty-one Kelly employees. Of those sixty-one, less than half were Black, and less than half were male. *Id.*

Kelly then began its investigation. When Kelly receives a report of inappropriate conduct with students, it suspends the employee's access to Frontline, pending completion of its investigation. *Id.* Kelly then notifies the employee of the investigation and asks that the employee submit a statement of his or her version of events. *Id.* Depending on the circumstances, Kelly may ask for additional information from the district, including witness statements and video footage, or, if additional information is unavailable, an investigative summary of the incident. *Id.* Kelly's Incidents and Compliance team then reviews the available information and decides whether to terminate the employee from his or her position with Kelly. *Id.* at 7.

Pursuant to Kelly's standard procedures, Miller forwarded the December 6, 2019 emails with Lawrence Township to Kelly's Payroll and Compliance Specialist, Laura Clingler ("Clingler"). Clingler was responsible for managing Kelly's investigation and communicating with Hunt about the investigation. *Id.* Clingler emailed Hunt on December 6, 2019, stating his Frontline access had been suspended and that she would reach out to him on Monday, December 9, 2019, to discuss the allegations and obtain his statement. *Id.*

Clingler and Hunt spoke on the telephone on December 9 or 10, 2019.[2] *Id.* Clingler told Hunt "a couple of students" had reported he had looked at them and other female students inappropriately. She stated the students claimed Hunt had "looked them up and down" and watched them bend over, and that some of the students reported he had been looking at pictures of cheerleaders or children on his computer. *Id.* Clingler told Hunt all of the information she believed

---

[2] Although the precise date of this call is unclear, for ease of reference, the Court will refer to this call as the "December 9, 2019 call."

7

he needed to know so that he could respond to the allegations. *Id.* Hunt responded that his assigned class had been split up, that he had asked one student to take off his headphones, and that he had chastised a student for talking about another student's appearance. *Id.* He also told Clingler that two or three male students had approached him near the end of the school day to tell him that female students were in the office reporting that he had looked at them inappropriately. *Id.* at 7–8. Hunt denied any inappropriate conduct and expressed concern that the male students had been able to overhear the female students' conversation. *Id.* at 8. Clingler told Hunt she would email him a statement form to fill out to submit to Kelly's corporate office. She told him to include any relevant information in his written statement. *Id.*

Hunt submitted his written statement on December 11, 2019. *Id.* The statement reiterated much of what Hunt had told Clingler during their December 9, 2019 call. Hunt also noted his long history of substitute teaching, stated he owned several companies that provide youth services, and gave a more detailed account of December 6, 2019, from his perspective. *Id.* at 9. Hunt additionally confirmed that he had used his personal computer on December 6, 2019, although he did not have internet access. *Id.*

After speaking with Hunt, Clingler requested that Lawrence Township provide video footage of Hunt's interactions with the students, but Lawrence Township declined to provide the footage. *Id.* Clingler also asked Lawrence Township for Hunt's internet browser history. Lawrence Township stated it could not provide the browser history because Hunt had not used Harrison Hill's wireless network. *Id.* Clingler then concluded Lawrence Township could not or would not provide any more information, so she submitted Oglesby's December 6, 2019 email and Hunt's written statement to Kelly's Incidents and Compliance team. The Incidents and Compliance team reviewed the information and decided to retain Hunt as a Kelly employee. *Id.* This decision

was based in part on the fact that Kelly had not been able to obtain more information from Lawrence Township (such as student statements and video), and because Hunt had worked for Kelly for several years without similar complaints being made against him. *Id.* ¶ 20. On December 18, 2019, Clingler told Hunt that he could continue accepting substitute teaching assignments, except assignments in Lawrence Township, pursuant to Lawrence Township's request. *Id.* at 9–10.

Hunt accepted four substitute teaching assignments outside Lawrence Township between March 5 and 12, 2020. *Id.* Indianapolis schools shut down shortly thereafter due to the COVID-19 pandemic. *Id.* On July 15, 2020, Clingler emailed Hunt to notify him that his substitute teaching permit needed to be renewed before he could accept additional assignments. Clingler received no response, so she reached out again via email and telephone on July 28, 2020. Clingler again received no response, and because Hunt's permit had expired, she suspended his Frontline access. *Id.* Hunt remains a Kelly employee and may accept new substitute teaching assignments outside Lawrence Township once he renews his substitute teaching permit. *Id.* No Kelly employee ever made comments about Hunt's race, gender, or age, and Hunt does not know of any Kelly employee outside of his protected classes who Kelly treated differently after receiving a district's request to exclude that employee. *Id.* at 10–11.

### III.    DISCUSSION

Hunt alleges Kelly excluded him from accepting assignments in Lawrence Township because of his race, gender and age in violation of Title VII and ADEA. Kelly contends that Hunt's exclusion from Lawrence Township was not an adverse employment action, and that Hunt cannot prove he was excluded because of his race, gender, or age. The Court will address each of Kelly's arguments in turn. The Court will also address a new allegation of due process violations raised in Hunt's response brief.

A.     **Hunt's Title VII and ADEA Claims**

Title VII and the ADEA make it "unlawful . . . for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or "because of such individual's age," respectively. 42 U.S.C. § 2000e–2(a)(1); 29 U.S.C. § 623(a)(1). The Seventh Circuit has held that "*all* discrimination cases present the same basic legal inquiry: At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)) (emphasis and alteration in original). In *Ortiz v. Werner Enterprises, Inc.*, the Seventh Circuit overruled a series of cases dividing discrimination claims into "direct" and "indirect" categories and assigning different legal standards to each. *See* 834 F.3d at 765 ("Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'"). But as a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," courts employ the well-known burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Under *McDonnell Douglas*, a plaintiff must first show that "(1) he is a member of a protected class; (2) he performed his job to his employer's expectations; (3) he suffered an adverse employment action; and (4) one or more similarly situated individuals outside his protected class received better treatment." *Ferrill*, 860 F.3d at 500 (citation omitted). If the plaintiff demonstrates

these elements, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Id.*  "If the employer does this, then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

### 1. <u>Adverse Employment Action</u>

Kelly argues Hunt cannot satisfy the second element of a *prima facie* Title VII or ADEA claim—an adverse employment action.  *Ferrill*, 860 F.3d at 500.  Kelly points out that it did not terminate Hunt, and that his exclusion from Lawrence Township is not an adverse employment action.  Hunt responds that his exclusion from Lawrence Township was an adverse employment action because it prevented him from working in the school district in which he lives and most frequently taught, and because it affected his reputation in the community (Filing No. 50 at 22, 26–27).

The Seventh Circuit notes that it would be "impossible" to create "a precise list of activities that constitute adverse employment actions . . . because of the unique circumstances of individual cases."  *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465–66 (7th Cir. 2002).  Seventh Circuit courts therefore use a "flexible, *practical* approach," in identifying adverse employment actions." *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008) (quoting *Hilt-Dyson*, 282 F.3d at 466). Nevertheless, an adverse employment action must be "materially adverse, 'meaning more than a mere inconvenience or an alteration of job responsibilities.'"  *Hilt-Dyson*, 282 F.3d at 465 (quoting *Crady v. Liberty Nat'l Bank & Tr. Co.*, 993 F.2d 132, 136 (7th Cir.1993)). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). *See Crady*, 993 F.2d at 136 (finding an employee's transfer to another bank branch and change of responsibilities was not a materially adverse employment action).

Here, Hunt's exclusion from Lawrence Township is not a materially adverse employment action. Although Hunt lives in and primarily taught in Lawrence Township, he was (and is, pending renewal of his substitute teaching permit) still able to accept the same type of assignments as his district assignments in other districts and charter schools in the Indianapolis area (Filing No. 50-1 at 55–56; Filing No. 42 at 10). Hunt accepted several such assignments both before and after his exclusion from Lawrence Township (Filing No. 42 at 2–3). The fact that Hunt may now need to travel further to substitute teach is insufficient to establish an adverse employment action.[3] *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (finding that lateral transfer with longer commute did not constitute adverse employment action); *Stutler v. Ill. Dep't of Corrs.*, 263 F.3d 698, 702–03 (7th Cir. 2001) (finding that change in job title and lateral transfer resulting in increased commute does not constitute adverse employment action); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (finding that school principal's transfer to school further from her home did not constitute adverse employment action).

Hunt also argues his exclusion from Lawrence Township was an adverse employment action because it has caused him "shame and humiliation," and implies that he did act inappropriately, thus harming his reputation and "jeopardiz[ing]" his future (Filing No. 1-1 at 2; Filing No. 50-1 at 4, 61). However, "public perceptions [are] not a term or condition of … employment," so Hunt's emotional and reputational harm cannot constitute a materially adverse employment action. *Spring*, 865 F.2d at 886; *see Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 471 (7th Cir. 2018) ("Madlock's co-workers . . . may have viewed the transfer as a demotion

---

[3] Hunt briefly mentions that he "has nerve damage in [his] hands, arm, shoulder, lower back, and feet," and "[a]s a result, distance matters when the Plaintiff is traveling" (Filing No. 50-1 at 70). Hunt offers no evidence of his alleged nerve damage or how such damage affects his commute, so the Court may not consider these assertions in deciding summary judgment. Fed. R. Civ. P. 56(c), (e).

or a humiliation, but their opinions about Madlock's work situation are not a term of Madlock's employment."); *Flaherty v. Gas Rsch. Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (finding that plaintiff's "bruised ego" resulting from lateral transfer was insufficient to establish adverse employment action); *see also Kubsch v. Ind. State Police*, No. 10 CV 495, 2015 WL 128002, at *11 (N.D. Ind. Jan. 8, 2015) (rejecting plaintiff police officer's argument that temporary assignment to administrative duties pending fitness-for-duty evaluation, which "caused her humiliation and embarrassment," was not an adverse employment action); *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("[P]ublic humiliation or loss of reputation does not constitute an adverse employment action . . . .").

Kelly's decision to exclude Hunt from assignments in Lawrence Township is not a materially adverse employment action.[4] Hunt cannot satisfy the elements of a *prima facie* case of employment discrimination under *McDonnell Douglas*, so dismissal is appropriate. But even under *Ortiz*'s more holistic approach, dismissal would still be appropriate because Hunt cannot show his exclusion from Lawrence Township was motivated by his race, gender, or age, or that Kelly's nondiscriminatory reason for his exclusion was pretextual.

### 2. Evidence of Discrimination or Pretext

Hunt argues that Kelly discriminated against him by failing to investigate the students' allegations and complying with Lawrence Township's request, by omitting details about the students' allegations from the December 9, 2019 call, and by asking Lawrence Township about the police and DCS's involvement. Kelly argues Hunt is unable to offer any evidence showing any of

---

[4] Kelly also argues that a staffing agency does not take an adverse employment action against its employees when a customer decides to terminate the employee (Filing No. 42 at 14). Because the Court has concluded that the alleged employment action was not adverse to Hunt, the Court need not decide whether Kelly took the employment action.

its actions (or inactions) were motivated by his race, gender, or age, and that Kelly had a nondiscriminatory reason for each of the complained actions. Kelly's position is well-taken.

Hunt argues that Lawrence Township requested his exclusion based on stereotypes about older Black men and explains "[b]eing an African American male, all environments have the propensity to exhibit discrimination towards Plaintiff…[m]ost of the incidents occur when white female teachers don't trust the Plaintiff with younger students mostly K-2nd graders." (Filing No. 50 at 6). Hunt argues that Kelly participated in Lawrence Township's discrimination by failing to adequately investigate the students' allegations and by complying with Lawrence Township's discriminatory request.

Unfortunately for Hunt, nothing in the record ties the deficiencies in Kelly's investigation or its compliance with Lawrence Township's request to his race, gender, or age. Although the investigation may have been deficient, those deficiencies, by themselves, are not evidence of discrimination (Filing No. 42 at 20). "[E]ven where a plaintiff . . . alleges that 'the company's investigation was imprudent, ill-informed and inaccurate,' summary judgment is not appropriate unless the employee 'could point to facts suggesting the company investigated [him] differently" because of his protected status. *Biolchini v. Gen. Elec. Co.*, 167 F.3d 1151, 1154 (7th Cir. 1999). Hunt has not identified any Kelly employees who were investigated differently, or any other facts suggesting a discriminatory motive.[5]

---

[5] Hunt asserts that he did not receive certain information from Kelly about its investigation and was unable to depose some of Kelly's investigators. He argues that Kelly's motion for summary judgment should be denied so that he can obtain that information and testimony. *Pro se* litigants are not excused from complying with the Federal Rules of Civil Procedure regarding discovery. Hunt was made aware of those rules early in this litigation (Filing No. 11), and the Court gave him ample time to complete his discovery (Filing No. 22; Filing No. 32; Filing No. 38). If Hunt believed Kelly was withholding information, or believed he needed additional time to obtain such information, it was incumbent on him to raise those issues with the Court and seek appropriate relief before his summary judgment response was due. Hunt's failure to do so is not grounds for denying Kelly's motion.

Further, there is no evidence that Kelly knew Lawrence Township's request was discriminatory. *Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689 (7th Cir. 2005) (holding a staffing agency may, in some circumstances, be liable for its customers' discrimination, but only if the agency knew about the discrimination). To the contrary, Lawrence Township's correspondence with Kelly did not mention Hunt's race, gender, or age; Lawrence Township supported its request with statements from students;[6] Lawrence Township had not raised any complaints about Hunt in the prior several years he taught there; and of the sixty-one Kelly employees that Lawrence Township asked to exclude, less than half were Black, and less than half were male (Filing No. 42 at 4, 6, 15–16; Filing No. 43-4; Filing No. 43-4). The fact that Lawrence Township's decision was hasty or incorrect is not evidence of discrimination (Filing No. 50-1 at 17–18).

Additionally, Kelly has offered evidence of a nondiscriminatory reason for complying with Lawrence Township's request—its contract with Lawrence Township. Hunt has offered no evidence showing Kelly's reason was pretextual. A "pretext" is "a lie or a phony reason for an employment decision." *Baron v. City of Highland Park*, 195 F. 3d 333, 341 (7th Cir. 1999). Hunt argues Kelly uses its contracts as a pretext to accommodate and perpetuate its customers' discriminatory requests (Filing No. 50-1 at 82–84), but he offers no factual evidence to support this theory and, accordingly, cannot create a genuine dispute of material fact regarding pretext.

Hunt next contends that Clingler discriminated against him by omitting details about the students' allegations during the December 9, 2019 call (Filing No. 50 at 7–8). He asserts, without support, that "the withholding of information . . . is a common form of discrimination," but does not point to any admissible evidence showing Clingler withheld the information for discriminatory

---

[6] Hunt complains about deficiencies in Lawrence Township's investigation, like Lawrence Township's failure to interview male students from his class, but he cites no admissible evidence about Lawrence Township's investigation, so the Court may not consider Hunt's factual allegations about the investigation as evidence. Fed. R. Civ. P. 56(c), (e).

purposes (Filing No. 50-1 at 63). Kelly, however, has offered evidence of a nondiscriminatory reason for Clingler's actions. Clingler testified that she omitted details from the December 9, 2019 call because she believed Hunt did not need to know those details to respond to the allegations (Filing No. 54 at 8–9). Hunt argues that Clingler had no training as an investigator and was therefore unqualified to decide what information Hunt would have needed, (Filing No. 50-1 at 23–24), but the Court may not question Kelly's decision to give Clingler that discretion. *Stockwell v. City of Harvey*, 597 F.3d 895, 901–02 (7th Cir. 2010) ('[C]ourts are not 'superpersonnel department[s]' charged with determining best business practices" (second alteration in original)). In other words, Clingler's poor judgment is not enough to show pretext. Hunt must show Clingler's explanation is not credible or is factually baseless. He has not offered any such evidence.[7]

Hunt lastly contends that Miller discriminated against him by asking Lawrence Township whether it had reported the incident to the police or DCS (Filing No. 50-1 at 73). Hunt argues Miller's question assumed, on the basis of Hunt's race, gender, and age, that he, in fact, had acted inappropriately. *Id.* at 33. Hunt believes Miller "would have been more responsible in her enquiry [sic] … if the accused were a white male or female". *Id.* at 19, 33. But once again, Hunt's contentions are unsupported by admissible evidence.[8] He does not identify any similarly situated employees who were treated differently, and nothing in the record indicates Miller's question was motivated by Hunt's race, gender, or age, or even a belief that Hunt had acted inappropriately.

---

[7] Hunt cites inconsistencies between Clingler's and Miller's deposition testimony about the investigation in attacking Clingler's credibility, but Hunt did not file a copy of Miller's deposition transcript, so the Court may not consider Miller's deposition testimony on summary judgment (Filing No. 50 at 18–20; Filing No. 50-1 at 12–16, 24).

[8] In its briefing, Kelly states that in her deposition testimony, Miller explains her nondiscriminatory reason for asking about the police and DCS-- i.e., it was protocol to inquire whether DCS or police were contacted--but like Hunt, Kelly did not file a copy of the deposition transcript, so the Court may not consider Miller's deposition testimony. (Filing No. 54 at 8).

Hunt has not identified any evidence from which a reasonable factfinder could conclude that Kelly discriminated against him on the basis of his race, gender, or age. Under either *McDonnell Douglas* or *Ortiz*, dismissal of Hunt's claims is warranted.

B. **Hunt's Due Process Claims**

In his response brief, Hunt alleges Kelly violated his due process rights by failing to adequately investigate the students' allegations before excluding him from Lawrence Township (Filing No. 50 at 2–3, 17; Filing No. 50-1 at 41–42). But Hunt has not asserted any due process claims in his Complaint, and "a plaintiff may not amend his complaint through arguments in his brief in opposition to amotion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (quotation marks and citation omitted). Moreover, the due process clauses of the Fifth and Fourteenth Amendments apply only to the federal and state governments, respectively, and Hunt has not alleged that Kelly is a governmental entity. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 837–38 (1982).

Hunt is understandably frustrated that he was excluded from Lawrence Township and that Kelly's investigation did exonerate him from the students' allegations, but this lawsuit is not an opportunity for him to re-investigate those allegations and "vindicate" himself (Filing No. 50-1 at 10). The only issue here is whether Kelly discriminated against Hunt on the basis of his race, gender, or age. Hunt has offered no evidence from which a reasonable factfinder could conclude that Kelly did so, so dismissal is appropriate. The Court therefore **grants** Kelly summary judgment.

IV. **CONCLUSION**

For the reasons discussed above the Court **GRANTS** Defendant Kelly Services, Inc.'s Motion for Summary Judgment (Filing No. 41). Plaintiff John George Hunt's claims are **DISMISSED** on summary judgment, and final judgment will issue under separate order.

**SO ORDERED**.

Date: 9/15/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John George Hunt
6330 Woods Edge North #20
Indianapolis, Indiana  46250

Andrew L. Scroggins
SEYFARTH SHAW
ascroggins@seyfarth.com